**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**MYRON KNIGHT**, *et al.*,

      **Plaintiffs,**

**-v-**                                                       **Case No.: 2:16-cv-1175**
                                                               **JUDGE GEORGE C. SMITH**
                                                               **Magistrate Judge Kemp**

**IDEA BUYER, LLC,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Idea Buyer, LLC, Eric Corl, John Weller, Alexis Chambers, Michael Corradini, Jess McPherone, and Ari Marcellino's[1] Motion to Dismiss pursuant to Rule 12(B)(1) of the Federal Rules of Civil Procedure, or in the alternative, to stay litigation and compel arbitration. (Doc. 17). This Motion is fully briefed and ripe for review. For the reasons that follow, Defendants' Motion to Dismiss is **GRANTED** and the Motion to Stay is **DENIED AS MOOT**.[2]

**I.    BACKGROUND**

Plaintiffs Myron Knight and Royce Dickerson, on behalf of themselves and all other similarly situated, initiated this class action lawsuit on December 15, 2016. (Doc. 1, Compl.).

---

[1] The moving Defendants are all of the defendants who have counsel of record in this case. The remaining named Defendants (Stephen Wilson, Thomas Stevens, Alexa McGuire, and John Does 1-10) do not have counsel and have not joined in this Motion.

[2] Plaintiffs have moved to file a surreply, which is fully briefed. (*See* Docs. 24–26). Plaintiffs' Motion is hereby **GRANTED** and the Court will consider the arguments in deciding the aforementioned Motion to Dismiss.

Plaintiffs bring this claim against Defendant Idea Buyer, LLC, and the individual Defendants who are current and former officers and/or employees of Idea Buyer, LLC, for violations of the American Inventor's Protection Act, 35 U.S.C. § 297 ("AIPA"), unjust enrichment, fraudulent inducement, and injunctive relief.

Plaintiffs Knight and Dickerson are individuals, and customers as defined by 35 U.S.C. §297(c)(2), who entered into contracts with Idea Buyer, an invention promoter, for invention promotion services. Defendant Idea Buyer is an Ohio limited liability company, with its principal place of business in Dublin, Ohio. Idea Buyer offers invention promotion services as defined in 35 U.S.C. § 297(c)(4), as it works to find a firm, corporation, or other entity to develop and market products or services that include the invention of the customer. Plaintiffs claim that Defendants have engaged in a deceptive pattern and practice in their invention promotion services and failed to provide the mandatory pre-contract disclosures under the AIPA.

On November 12, 2014, Plaintiff Knight entered into a "Fast Track Agreement" with Idea Buyer, and on May 23, 2015, Plaintiff Dickerson entered into the same agreement with Idea Buyer (hereinafter the "Agreements"). Plaintiffs asserts that at no time prior to, during, or after negotiations and entering into the Agreements for services with Idea Buyer, did Idea Buyer ever comply with 35 U.S.C. § 297(a)[3] of the AIPA.

---

[3] 35 U.S.C. § 297(a) specifically provides:
(a) In general. An invention promoter shall have a duty to disclose the following information to a customer in writing, prior to entering into a contract for invention promotion services:
(1) the total number of inventions evaluated by the invention promoter for commercial potential in the past 5 years, as well as the number of those inventions that received positive evaluations, and the number of those inventions that received negative evaluations;

(2) the total number of customers who have contracted with the invention promoter in the past 5 years, not including customers who have purchased trade show services, research, advertising, or other nonmarketing services from the invention promoter, or who have defaulted in their payment to the invention promoter;

The Agreements between Plaintiffs and Idea Buyer contain an arbitration provision, which states:

> Any and all disputes shall be submitted to binding arbitration. In the event that a dispute arises concerning this Agreement or performance under this Agreement, the dispute shall be submitted to binding arbitration through and pursuant to the rules of the American Arbitration Association.

(Doc. 17-1, Knight and Dickerson Fast Track Agreements). Defendants argue by virtue of the above provision, that this case must be submitted to arbitration.

Plaintiffs, however, contend that "[b]ecause 35 U.S.C. § 297(a) of the AIPA applies to precontract negotiations, before any meetings of the minds occurs with respect to any contractual obligations, any arbitration provision that may be relied upon by Defendants is inapplicable to this action, and therefore, void." (Doc. 1, Compl. ¶ 34).

## II. STANDARD OF REVIEW

Defendants move to dismiss this case pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction based on their argument that Plaintiffs' claims are subject to an arbitration agreement. "When an agreement to arbitrate encompasses claims asserted in court, dismissal is appropriate under Fed. Rule Civ. P. 12(b)(1) for lack of subject matter jurisdiction. . . ." *Deck v. Miami Jacobs Bus. College Co.*, No. 3:12-cv-63, 2013 U.S. Dist. LEXIS 14845, 26 (S.D. Ohio Jan. 31, 2013) (Black, J). In the alternative, Defendants

---

(3) the total number of customers known by the invention promoter to have received a net financial profit as a direct result of the invention promotion services provided by such invention promoter;

(4) the total number of customers known by the invention promoter to have received license agreements for their inventions as a direct result of the invention promotion services provided by such invention promoter; and

(5) the names and addresses of all previous invention promotion companies with which the invention promoter or its officers have collectively or individually been affiliated in the previous 10 years.

seek to have this case stayed pending arbitration.

Under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), a written agreement to arbitrate disputes arising out of a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The requirements set forth in the FAA were "designed to override judicial reluctance to enforce arbitration provisions, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." *Stout*, 228 F.3d at 714.

Section 4 of the FAA sets forth the procedure to be followed by the district court when presented with a petition to compel arbitration and provides, in relevant part, that:

> [a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.... If the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof.

9 U.S.C. § 4. Thus, the Court must first inquire as to whether the parties have agreed to arbitrate the dispute at issue. If the district court is satisfied that the agreement to arbitrate is not "in issue," it must compel arbitration. If the validity of the agreement to arbitrate is "in issue," the court must proceed to a trial to resolve the question. *Id.*

In order to show that the validity of the agreement is "in issue," the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *See Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 129–30 (2d Cir. 1997). The required showing mirrors that required to withstand summary judgment in a civil suit. *Id.; see*

*also Aiken v. City of Memphis*, 190 F.3d 753, 755 (6th Cir. 1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000). But "[i]n order to show that the validity of the agreement is 'in issue' [under 9 U.S.C. § 4], the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002).

The FAA establishes a liberal policy favoring arbitration agreements, and any doubts regarding arbitrability should be resolved in favor of arbitration over litigation. *See Nestle Waters North America, Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007) ("[W]e examine arbitration language in a contract in light of the strong federal policy in favor of arbitration, resolving any doubts as to the parties' intentions in favor of arbitration."). However, "[w]hile ambiguities … should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (internal citation omitted).

The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute." *See Nestle*, 505 F.3d at 504. If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent the most extreme circumstances. *Allied Steel,* 277 F.2d at 913. Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Id.*

## III. DISCUSSION

Defendants have moved this Court to dismiss Plaintiffs' claims for lack of subject matter jurisdiction, or in the alternative, to stay these proceedings pending arbitration. Defendants assert that Plaintiffs claims are subject to the arbitration provision set forth in the Agreements. Plaintiffs, however, argue that their claims do not sound in contract, but arise from Defendants' violations of the AIPA, and therefore are not arbitrable. Further, Plaintiffs argue because of Defendants' violations of the AIPA in failing to provide the required disclosures prior to contracting, that there was no meeting of the minds. The Court will first consider the application and enforceability of the arbitration provision in the Agreements, and then, if necessary, determine if the arbitration provision allows for class action arbitration.

### A. Enforceability of the Arbitration Provision

There is no dispute between the parties that both Plaintiffs Knight and Dickerson entered into Agreements that contains an arbitration provision. However, Plaintiffs' raise several arguments as to why their claims are not subject to arbitration, including that the statutory language of the AIPA prevents arbitration, the intent of the parties was not in favor of arbitration, and that there was no meeting of the minds and, therefore, there was no contract. The Court will address these arguments in turn.

"Arbitration is simply a matter of contract between parties; it is a way to resolve disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *see also AT&T Tech., Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 648–649 (1986).

In the case at bar, the arbitration language of the Agreements specifically provides:

> Any and all disputes shall be submitted to binding arbitration. In the event that a dispute arises concerning this Agreement or performance under this Agreement, the dispute shall be submitted to binding arbitration through and pursuant to the rules of the American Arbitration Association.

(Doc. 17-1, Knight and Dickerson Fast Track Agreements).

### 1. Statutory Language

Plaintiffs argue based on the express language of the AIPA, specifically the reference to "court" four times in the statute, that any claims brought pursuant to the AIPA must be brought in a court of law and are not subject to arbitration. (Doc. 21, Pls.' Resp. at 2). The relevant portion of the AIPA referenced by Plaintiffs is 35 U.S.C. § 297(b):

> (b) Civil action. (1) Any customer who enters into a contract with an invention promoter and who is found by a court to have been injured by any material false or fraudulent statement or representation, or any omission of material fact, by that invention promoter (or any agent, employee, director, officer, partner, or independent contractor of such invention promoter), or by the failure of that invention promoter to disclose such information as required under subsection (a), may recover in a civil action against the invention promoter (or the officers, directors, or partners of such invention promoter), in addition to reasonable costs and attorneys' fees--(A) the amount of actual damages incurred by the customer; or (B) at the election of the customer at any time before final judgment is rendered, statutory damages in a sum of not more than $ 5,000, as the court considers just.
>
> (2) Notwithstanding paragraph (1), in a case where the customer sustains the burden of proof, and the court finds, that the invention promoter intentionally misrepresented or omitted a material fact to such customer, or willfully failed to disclose such information as required under subsection (a), with the purpose of

deceiving that customer, the court may increase damages to not more than three
times the amount awarded, taking into account past complaints made against the
invention promoter that resulted in regulatory sanctions or other corrective
actions based on those records compiled by the Commissioner of Patents under
subsection (d).

35 U.S.C. § 297.

Defendants counter that there is no evidence in the AIPA language that Congress intended to preclude arbitration when resolving AIPA claims. Defendants argue that Plaintiffs' reliance on the use of the word "court" in the language of the AIPA does not prove that Congress intended to preclude arbitration. The Court agrees. Without more, mere use of the word "court" does not preclude arbitration. Rather, the word court could be construed as any trier of fact. The United States Supreme Court has held that:

> It is utterly commonplace for statutes that create civil causes of action to describe
> the details of those causes of action, including the relief available, in the context
> of a court suit. If the mere formulation of the cause of action in this standard
> fashion were sufficient to establish the 'contrary congressional command'
> overriding the FAA, valid arbitration agreements covering federal causes of
> action would be rare indeed.

*CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 100 (2012). The Court further stated that terms like "court" and "suit" are a "colloquial method of communicating to consumers that they have the legal right, enforceable in court, to recover damages. . ." as long as the arbitration provision does not prevent them from asserting and recovering for that right, it is enforceable. *Id.* at 103.

Further, simply because the statute at issue is a consumer protection statute, this does not require that any dispute arising under the statute cannot be arbitrated. Defendants highlight several cases in which courts have enforced arbitration agreements in cases alleging violations of a consumer protection statute. (*See* Doc. 23, Defs.' Reply at 3–4).

   2.    **AIPA Pre-contractual Duties**

Plaintiffs argue that there is an inherent conflict between the AIPA and arbitration because the express terms of the AIPA impose substantive pre-contractual duties upon invention promoters. Specifically, Plaintiffs assert that "[a] statute that mandates ***"substantive" pre-contractual*** disclosures is inherently conflicted with a statute and/or a document that by its very terms governs ***"procedural" post-contractual*** rights and obligations." (Doc. 24-1, Pls.' Surreply at 4) (emphasis in original). Therefore, Plaintiffs argue that Defendants' failure to provide the pre-contractual disclosures precludes a meeting of the minds in this case.

Plaintiffs rely on *Higgs v. Warranty Grp.,* No. C2-02-1082, 2007 U.S. Dist. LEXIS 50064 (S.D. Ohio July 11, 2007) (Sargus, J.), arguing that it is instructive since the pre-contractual disclosures at issue in this case are designed to protect consumers, and suggesting that submitting their claims to arbitration would not protect consumers. (Doc. 21, Pls.' Response at 9–10). Plaintiffs ask this Court to read the statute as a whole, combining the multiple mentions of the term "court" in the AIPA with the underlying purpose of the statute–consumer protection, and ultimately conclude that arbitration is not appropriate in this case. (*Id*. at 10).

Defendants counter that the *Higgs* holding relies on regulations enacted by the FTC as applied specifically to the Magnuson-Moss Warranty Act. *Higgs*, 2007 U.S. Dist. LEXIS 50064 at *27 ("The FTC is entrusted with the power to interpret the MMWA, and has construed the statute to preclude the enforcement of binding arbitration."). Defendants argue, and the Court agrees, that there is no evidence that Congress intended to preclude arbitration of AIPA claims. In fact, as referenced by Defendants, there are a number of cases in which federal courts have enforced arbitration agreements in AIPA cases. (*See* Doc. 23, Defs.' Reply at 4).

Having found that there is no bar to arbitration of AIPA claims in general, the Court turns

to the specific arbitration provision at issue in this case to determine if it should be enforced in this case.

### 3. Validity of Arbitration Provision in the Agreements

Plaintiffs argue that their claims of pre-contract AIPA violations are not subject to the arbitration provisions and that those pre-contract violations actually void the Agreements. (Doc. 21, Pls.' Resp. at 10–11). Plaintiffs specifically reference their Complaint:

> 34. Because 35 U.S.C. § 297(a) of the AIPA applies to *precontract* negotiations, before any meetings of the minds occurs with respect to any contractual obligations, any arbitration provision that may be relied upon by Defendants is inapplicable to this action and, therefore, void. Defendants and Plaintiffs never had a meeting of the minds and/or mutual assent as to any alleged arbitration provision, as Plaintiffs, the putative Class Members and Defendants had never entered into the contract at the time the statutory duties and obligations under 35 U.S.C. § 297(a) of the AIPA necessarily, i.e. precontract, arose.

(Doc. 1, Compl. ¶ 34).

Defendants argue that Plaintiffs' argument that the Agreements are somehow unenforceable or void fails. The Court finds the case of *Henderson v. U.S. Patent Comm'n*, No. 15 C 3897, 2015 U.S. Dist. LEXIS 147813 (N.D. Ill. Nov. 1, 2015), to be instructive on this issue. The *Henderson* court considered whether the failure to comply with the state inventor protection acts, particularly pre-contract violations, made the agreements void and unenforceable. Specifically:

> Henderson does not dispute that most of her claims fall within the arbitration clauses' scope. She argues, however, that the [inventor protection act] claims are not governed by the arbitration clauses because certain allegations underlying those claims predate the agreements. That argument fails to persuade. The arbitration clauses broadly encompass '[a]ny and all disputes regarding this or other agreements between Client and Consultants'. As the Seventh Circuit has held 'broad language necessarily create[s] a presumption of arbitrability, which requires the at any doubts concerning the scope of arbitrable issues should be

> resolved in favor of arbitration.' Although the [inventor protection act] claims pertain in part to events pre-dating the agreements, allegations arising from those events 'regard[ ]' the agreements – they are closely related to the transactions set forth in the agreements – and the claims themselves are premised on the notion that the agreements are governed by [the inventor protection acts] – a determination that, as it affects the validity of the agreements as a whole. . .is reserved for the arbitrator.

*Id.* at *9–10.

The Court finds that any review of the validity of Plaintiffs' AIPA claims and the effect on the enforceability of the Agreements at issue in this case, is an issue for arbitration as the parties agreed that "Any and all disputes shall be submitted to binding arbitration." (Doc. 17-1, Knight and Dickerson Fast Track Agreements). Just as in *Henderson*, the arbitration clause in this case is broad and encompasses "any and all disputes," and such broad language creates a presumption of arbitrability. *Henderson*, 2015 U.S. Dist. 147813 LEXIS at *9–10; *see also Phelps v. US Metals Grp.*, No. 1:09-cv-1039, 2009 U.S. Dist. LEXIS 125524 (N.D. Ohio Dec. 3, 2009) ("Alleged irregularities in the formation of the contract as a whole are an issue for the arbitrator to decide."); *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (challenge to the enforceability of a contract as a whole based on contract formation argument is an issue for the arbitrator); *Manuel v. Honda R&D Americas, Inc.*, 175 F. Supp. 2d 987, 990 (S.D. Ohio 2001) (Rice, J.) (allegation of unconscionability, coercion, enforceability of contract as a whole are for the arbitrator). Thus, absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided, a court must enforce a contractual agreement to arbitrate. *Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000). Plaintiffs' argument that they have merely stated in the Complaint that the Agreements at issue in this case were procured by fraud is not sufficient. Plaintiffs' have not offered any more than this general

statement. Accordingly, all of the issues raised by Plaintiffs, including the applicability and the enforceability of the arbitration provision, must be resolved through arbitration as the parties all signed the Agreements containing the arbitration provision.

### 4. Class Action Arbitration

Plaintiffs have filed this case as a class action but Defendants argue that the arbitration provision agreed upon by the parties does not allow for class action arbitration. The Sixth Circuit has established that "the question of whether an arbitration agreement permits classwide arbitration is a gateway matter, which is reserved 'for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Reed Elsevier, Inc. v. Crockett*, 734 F.3d 594, 599 (6th Cir. 2013). Therefore, the Court must consider whether the parties agreed to class arbitration. *See Stolt-Nielson S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 687 (2010) ("the question [is] whether the parties agreed to authorize class arbitration"). Therefore, absent some contractual agreement or other language authorizing class arbitration, the Court cannot infer such an agreement and compel class arbitration. *See Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 398–99 (6th Cir. 2014) (arbitration clause did not mention class arbitration, therefore not authorized and "the plaintiffs must proceed individually"); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 275 (7th Cir. 1995) ("[S]ection 4 of the FAA forbids federal judges from ordering class arbitration where the parties' arbitration agreement is silent on the matter.").

The arbitration provision at issue in this case is silent with respect to class arbitration and therefore the Court cannot infer that the parties intended to permit class arbitration. Accordingly, all plaintiffs with similar claims to those identified Plaintiffs in this case, shall proceed with their claims under the Agreements in individual arbitration proceedings.

**B.     Dismiss Plaintiffs Claim or Stay Pending Arbitration**

Upon finding that Plaintiffs' claims in this case are subject to the arbitration provision contained in the Agreements, the Court must determine whether Plaintiffs' Complaint should be dismissed or the case should be stayed pending arbitration. The FAA directs the Court to stay an action pending arbitration; however, the Court's ability to dismiss a case is not limited when all issues raised in the complaint are arbitrable. *See, e.g., Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (concluding "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable") (citation omitted); *Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Bercovitch v. Baldwin Sch., Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration."); *Gassner v. Jay Wolfe Toyota*, No. 4:06-CV-1335 CAS, 2007 U.S. Dist. LEXIS 35453, at *3 (E.D. Mo. May 15, 2007) ("Where all issues in a case must be submitted to arbitration, it serves no purpose to retain jurisdiction and stay an action."). Based on the applicable caselaw, the Court concludes that dismissal of Plaintiffs' Complaint is the appropriate remedy because all of Plaintiffs' claims are arbitrable. The Court can discern no purpose for retaining jurisdiction and staying the action.

## V. CONCLUSION

Based on the foregoing, Defendants' Motion to Dismiss is **GRANTED** and the Motion to Stay is **DENIED AS MOOT**. Further, Plaintiffs' Motion to file a Surreply is **GRANTED**.

The Clerk shall remove Documents 17 and 24 from the Court's pending motions list.

The Clerk shall close this case.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**